IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRC ENVIRONMENTAL CORPORATION, A Connecticut Corp., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. CIV-10-62-C ) |
| QUODDY BAY LNG, LLC an Oklahoma Limited Liability Company; DONALD M. SMITH, an individual; and BRIAN W. SMITH, an individual, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Quoddy Bay was formed for the purpose of promoting, developing, and ultimately building and operating a liquid natural gas terminal on the coast of Maine designed to accept ocean tanker shipments of liquid natural gas ("LNG"), convert the LNG into fuel-quality natural gas, and use an associated natural gas pipeline to deliver and sell fuel-quality natural gas. The original members of Quoddy Bay were Don Smith, with 25% ownership, James Mitchell, with 31.25% ownership, William Price with 31.25% ownership, and William Pritchard with 12.5% ownership. The current members of Quoddy Bay are Don Smith, James Mitchell, William Price, William Pritchard, and Smith Cogeneration International, Inc.

On April 11, 2005, TRC and Quoddy Bay executed a written agreement ("Agreement") pursuant to which TRC would provide Quoddy Bay with various environmental and consulting services needed to promote and develop the project. The Agreement was signed by Hubert Bereman on behalf of Quoddy Bay. Don Smith did not

sign the Agreement. Between April 11, 2005, and February of 2007, TRC was paid approximately $2,575,000 for consulting services pursuant to the Agreement. However, the parties are in dispute as to the source of all of those payments. Ultimately the parties' Agreement faltered as Quoddy Bay became unable to stay current on its payments. As the failure continued, TRC sued Defendants for breach of contract and quantum meruit and asserts that Defendants Don Smith and Brian Smith should be held personally liable for Quoddy Bay's debts. In that regard, Plaintiff seeks to pierce the corporate veil and obtain individual liability on the Smith Defendants. Each of the Smith Defendants has now filed a Motion for Summary Judgment seeking dismissal of the claims against them and arguing that no grounds exist on which the corporate veil can be pierced.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into

evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## **DISCUSSION**

The parties are in agreement that Oklahoma law governs the corporate veil piercing questions in this matter.[*] Under Oklahoma law, a legal fiction exists which protects shareholders and officers of a corporation from personal liability for the obligations of that corporate entity. Warner v. Hillcrest Med. Ctr, 1995 OK CIV APP 123 ¶ 23 n.5, 914 P.2d 1060, 1067 n.5. Before a party may pierce this corporate fiction or corporate veil and obtain personal liability from the shareholders or officers, the party must prove "that the separate corporate existence is a design or scheme to perpetrate a fraud" or that the "corporation is so

---

[*] As Plaintiff notes, the choice of law provision in the parties' Agreement dictates Connecticut law should govern. However, as Quoddy Bay argues only Oklahoma law and Plaintiff agrees to decide the matter under those provisions, the Court will follow the parties' agreement.

organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another." Id. citing Wallace v. Tulsa Yellow Cab & Baggage Co., 1936 OK 665 ¶ 18, 61 P.2d 645, 648.

Oklahoma has set forth a three-factor test to determine whether the corporate veil should be pierced. The Court may disregard the corporate entity if it is used "(1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, or (4) to defend crime." Robertson v. Roy L. Morgan Prod. Co., 411 F.2d 1041, 1043 (10th Cir. 1969); Warner, 1995 OK CIV APP 123 ¶ 23 n.5, 914 P.2d at 1067 n.5. This analysis will be employed to evaluate the propriety of the claims against the Smith Defendants.

Initially the Court notes that Defendant Don Smith argues that because Quoddy Bay was organized as an LLC, the typical veil-piercing rules do not apply and there cannot be individual liability under that scheme of corporate entity. As Plaintiff clearly sets forth in its response brief, Oklahoma law does not support Defendant Don Smith's arguments. Describing the concept of the corporate entity, and the times when the separateness of that entity would be disregarded, the Oklahoma Supreme Court stated:

> It is the general rule that a corporation is an entity separate and apart from the persons composing it, but the rule has its limitations. Both law and equity, when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice, disregard the distinct existence and treat them as identical. Caldwell v. Roach, 44 Wyo. 319, 12 P.2d 376. The doctrine that a corporation is a legal entity, separate and apart from the persons composing it, is a legal theory introduced for purposes of convenience and to subserve the ends of justice, but the concept will not be extended to a point beyond its reason and policy, and when invoked in support of an end subversive of said policy will be disregarded by the courts. 13 Am.Jur., Corporations, sec. 7, p. 160.

Mid-Continent Life Ins. Co. v. Goforth, 1943 OK 244, ¶ 10, 143 P.2d 154, 157.  Nothing in the Oklahoma Limited Liability Company Act, 18 Okla. Stat. §§ 2000 et seq. suggests that these consideration would not apply to impose liability on the member of an LLC for similar wrongs.  Indeed, were the law otherwise, officers and shareholders of an LLC would have greater protection than that existing for other types of corporations.  Certainly there is no support in Oklahoma law for such a determination.  Accordingly, the Court finds that Oklahoma law permits piercing the corporate veil of an LLC under the same conditions as required for piercing the corporate veil of a corporation.

Plaintiff argues that fact questions exist about whether Quoddy Bay's existence was a design or scheme to perpetrate a fraud or promote an injustice.  Defendant, arguing that the facts are not in dispute, points to the testimony of TRC's corporate representative, David Jenkins.  According to Defendant Don Smith, Mr. Jenkins repeatedly testified that the only fraud committed in this case was the non-payment of TRC's invoices.  However, as Plaintiff notes, that testimony was taken prior to completion of full discovery.  Further, Plaintiff sets forth other arguments supported by appropriate evidence which must be considered in determining whether or not the corporate veil should be pierced.  In particular, Plaintiff points to certain withdrawals and capital contributions made by Mr. Smith to Quoddy Bay.  Plaintiff also points to the March 26, 2005, beginning of the Bers/Brandt transaction which was completed on April 30, 2005.  According to Plaintiff, this transaction ultimately resulted in Defendant Don Smith obtaining 92.5% control of Quoddy Bay.  Plaintiff also notes that Bers and Brandt received a substantial profit for their brief investment and subsequent resale

to Defendant Don Smith. Plaintiff also points to other loans from Quoddy Bay to Defendant Don Smith or companies owned by Defendant Don Smith. Plaintiff offers a significant number of examples of Defendant Don Smith moving funds in and out of Quoddy Bay either from or to other corporations which he owns and/or controls and which transactions did not always follow proper accounting and/or tax purposes. Thus, questions of fact exist as to whether or not Quoddy Bay was created and/or operated by Mr. Don Smith for a fraudulent purpose.

The second manner in which a determination that the corporate veil should be pierced looks at whether Quoddy Bay was organized and its affairs conducted such that it is merely an instrumentality or adjunct of Don Smith. Once again Plaintiff sets forth a number of examples of actions undertaken by Quoddy Bay and/or Defendant Don Smith which suggests that Quoddy Bay was used as nothing other than an instrumentality of Mr. Smith. Many of the transactions which were considered by the Court in the first element would certainly fall within the scope of the second option, as well. Therefore, as noted above, questions of fact exist as to whether or not Defendant Don Smith used Quoddy Bay as a mere instrumentality or adjunct.

As for Mr. Brian Smith, the Court finds Plaintiff has failed to offer evidence from which it is appropriate to pierce the corporate veil. There is no evidence that Brian Smith in any way controlled or manipulated the actions of Quoddy Bay or any other entity. Indeed the most that Plaintiff can point to is that Quoddy Bay paid for Brian Smith's living quarters and that Brian Smith went on an expensive trip. There simply is no evidence of control or

fraud committed by Brian Smith. Accordingly, Brian Smith's Motion for Summary Judgment will be granted.

Defendant Don Smith argues that Plaintiff's claims of corporate veil piercing are waived or estopped based on Plaintiff's knowledge of Quoddy Bay's cash flow problems. Quoddy Bay argues that by continuing to provide consulting services without obtaining a personal guaranty and with the knowledge that Quoddy Bay did not currently have capital to pay consulting fees, Plaintiff waived its right to complain after payments stopped. In response, Plaintiff argues first that there is no evidence or support under Oklahoma law for application of an equitable defense such as waiver or estoppel to a request to pierce the corporate veil. The Court agrees with Plaintiff's position. The law on which Defendant Don Smith relies is not controlling in this Court. Moreover, it appears to be an isolated decision that has not been followed by other courts. Accordingly, the Court declines to create a new defense in this case.

For the reasons set forth herein, the Court finds that Defendant Don Smith's Motion for Summary Judgment and Brief in Support (Dkt. No. 43) is DENIED. Defendant Brian Smith's Motion for Summary Judgment (Dkt. No. 83) is GRANTED.

IT IS SO ORDERED this 9th day of November, 2011.

ROBIN J. CAUTHRON
United States District Judge